IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN SCOTT, | ) | CASE NO. 3:25-CV-00439 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

## I.    Introduction

Plaintiff, Benjamin Scott ("Scott"), seeks judicial review of the final decision of the

Commissioner of Social Security, denying his application for disability insurance benefits

("DIB") under Title II of the Social Security Act and supplemental security income ("SSI")

under Title XVI of the Social Security Act. This matter is before me pursuant to 42 U.S.C.

§§ 405(g), 1383(c)(3), and Local Rule 72.2(b).

Scott raises one issue on review of the Administrative Law Judge's ("ALJ") decision,

arguing the ALJ failed to account for multiple limitations opined by the state agency experts and

erroneously rejected another without providing a proper explanation supporting her decision.

Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a

decision supported by substantial evidence, I recommend that the Commissioner's final decision

denying Scott's application for DIB and SSI be affirmed.

## II.    Procedural History

Scott filed for DIB on June 8, 2022, alleging a disability onset date of January 1, 2013.

(Tr. 65). That same day he also filed for SSI. (Tr. 75). The claims were denied initially and on

reconsideration. (Tr. 65, 75, 97, 98). Scott then requested a hearing before an Administrative

Law Judge. (Tr. 152). Scott, represented by counsel, and a Vocational Expert ("VE") testified

before the ALJ on October 24, 2023. (Tr. 37-69). On November 28, 2023, the ALJ issued a

written decision finding Scott not disabled. (Tr. 19-36). The Appeals Council denied his request

for review on December 30, 2024, making the hearing decision the final decision of the

Commissioner. (Tr. 1-3). Scott timely filed this action on March 4, 2025. (ECF Doc. 1).

### III.     Evidence

#### A.     Personal, Educational, and Vocational Evidence

Scott was born August 24, 1988. (Tr. 232). He was 24 years old on his alleged onset date

of January 1, 2013, making him a younger individual according to agency regulations. (Tr. 28,

239). His date last insured ("DLI") is listed as June 30, 2013 (Tr. 239). He completed high

school. (Tr. 73). He has no past relevant work. (Tr. 28).

#### B.     Relevant Medical Evidence[1]

On August 30, 2021, Scott had an office visit for mental health treatment at Zepf

Community Mental Health Center. (Tr. 342). He reported to his treating clinician Alyse Stolting

that his anxiety was "pretty good" and he felt that it was more manageable because he was

unable to go anywhere due to pain. (*Id.*). He noted that human contact could negatively affect his

mood and cause anxiety. (*Id.*). He reported that his medication was helpful for his mood and

denied any side effects. (*Id.*). He was, however, feeling helpless and hopeless because he had

been denied social security benefits, but had been "going gaming again at a game store" in an

effort to feel more comfortable in crowds. (Tr. 343). He was assessed with Generalized Anxiety

Disorder and Avoidant Personality Disorder. (Tr. 347). Prior notes from a May 11, 2021 visit

---

[1] As Scott's arguments concern his mental impairments the discussion of relevant medical evidence will
generally be restricted to mental health issues and impairments.

indicate Scott was continued on Zoloft 100 mg daily, which he reported as helpful for his anxiety and mood. (Tr. 348).

Scott returned to the Zepf Center on November 8, 2021 and reported he had recently enjoyed a vacation in Cancun attending his brother's wedding. (Tr. 363). He described himself as "hyperfixated with ADHD symptoms", adding that his focus is "pretty good." (*Id.*). He noted that chronic pain issues have lowered his mood and that he remains frustrated by his disability denial. (*Id.*). Scott's clinician wrote that "[o]verall he has remained stable on this regimen for several years." (*Id.*). He was continued on Zoloft and had declined a short course of Xanax offered as support for the trip. (Tr. 368).

At a February 2, 2022 appointment Scott reported that his mood "could be better" but that it was "average." (Tr. 382). He reported some anxious ruminations but stated that he could generally distract himself from them. (*Id.*). He felt anxious about his physical pain and lack of mobility, but he continued to benefit from his medications. (*Id.*).

On April 28, 2022, Scott reported that his sleep was "so-so." (Tr. 462). He was able to concentrate sufficiently for his hobbies of anime and video games. (*Id.*). He noted he was able to cope well with being seated next to strangers on a plane, and he reported no symptoms of depression. (*Id.*).

While establishing care with Kaitlin Short, LISW-S, Scott reported prior diagnoses of anxiety and ADHD. (Tr. 504). He informed Short that he was compliant with his mental health medications prescribed by Zepf Center. (*Id.*). He endorsed symptoms including persistent worry, poor sleep and loss of interest in activities due to pain, racing thoughts, fear of loss of control and social isolation. (*Id.*). His active problems and conditions included Generalized Anxiety Disorder and Major Depression, Recurrent, Severe with Anxiety. (*Id.*).

In an October 17, 2022 visit to the Zepf Center, Scott reported doing well since his last visit and he felt his medication was working for him. (Tr. 624). He did, however, feel "stuck in a rut." (*Id.*). He continued to report his mental health was "doing ok" on December 28, 2022, although he felt his physical health was affecting his mental health because it prevented him from leaving home. (Tr. 644).

At his March 2, 2023 appointment, Scott endorsed avoiding social interactions out of fear people will target or talk about him. (Tr. 664). He noted memory loss but felt that it was "helpful" in that it helped him forget people and deal better with grief and loss. (*Id.*). He also stated that he was sleeping poorly, and that he had lost interest in his hobbies and no longer is able to find joy. (*Id.*). Although his clinician was concerned that he had a decline in his baseline functioning, he was not interested in increasing his medications. (*Id.*).

On May 10, 2023, Scott reported to Ms. Stolting that he had been dealing with stress but was managing it. (Tr. 691). He described that his disabilities were affecting his self-esteem, and he was experiencing ongoing negative thoughts, anxious ruminations and catastrophic thoughts. (*Id.*). He felt his sleep and mental health continued to be hindered by his physical health, and he felt paralyzed by anxiety. (*Id.*). He continued to refuse a medication increase and remained on Zoloft 100 mg. (Tr. 697).

At a July 26, 2023 appointment with Nicole Covell, LISW-S, he indicated that he did not see a therapist because he did not feel a need to do so and that he was coping well on his own. (Tr. 717).

### C.    State Agency Reviewing Psychologist Opinion Evidence

On July 13, 2022, state agency reviewing psychologist Todd Finnerty, Psy.D., determined there was insufficient evidence to find mentally determinable impairments pre-dating

4

the DLI of June 30, 2013. (Tr. 70). For his current evaluation, Dr. Finnerty found that Scott had moderate limitations in interacting with others; concentration, persistence and maintaining pace; and adapting or managing oneself. He found a mild limitation in understanding, remembering and applying information. (Tr. 69). He also found moderate limitations in Scott's ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; or to respond appropriately to changes in the work setting. (Tr. 72-73). On November 2, 2022, state agency reviewing psychologist Kristen Haskins, Psy.D, generally affirmed Dr. Finnerty's findings, but found Scott was not significantly limited in his ability to carry out detailed instructions. (Tr. 94-95).

> **D.**    **Administrative Hearing Evidence**

On October 24, 2023, Scott testified before the ALJ that he was a high school graduate currently residing with his parents and his sister. (Tr. 45). He is able to drive "at times." (*Id.*). His current height and weight were 6'1" and 320 lbs. (Tr. 46-47). Scott indicated he felt he was unable to work due to pain and an inability to socialize. (Tr. 47). He specifically noted pain in his knees, hips, back, neck, hands and stomach and ankles, and reported suffering from irritable bowel syndrome. (*Id.*). He confirmed having peripheral arterial disease and a history of deep vein thrombosis. (*Id.*). He has issues with his right leg swelling a few times monthly. (Tr. 47-48). Scott testified that his diabetes was "pretty stabilized but I still spike quite a bit." (Tr. 49).

With regard to mental health, Scott testified that he takes medication for depression and anxiety that he finds "somewhat helpful." (Tr. 49-50). He reports his memory, both short and long-term, and concentration are poor. (Tr. 50). He indicates difficulty in being around other people, and only leaves home about once a week in order to pick up prescriptions, or for monthly trips to the store with his father. (*Id.*). Although he sees a psychiatrist for medication management, he has chosen not to go to counseling because he is not sure what he would gain from it. (Tr. 51).

On questioning by his attorney, Scott testified his right leg swells about three to five days per month. (Tr. 53). He tries to address the swelling by wearing compression stockings and elevating his leg for most of the day. (*Id.*). Due to hand pain he is no longer to engage in his hobbies, write or type. (Tr. 54). He usually has someone go with him whenever he leaves home for first-time experiences, but he will go alone to more familiar, frequent appointments. (*Id.*). He has difficulty with focus, and has trouble falling asleep at night, although he does nap for five to six hours or more daily. (*Id.*). Most days he feels as though he is stuck in bed and cannot get anything done. (*Id.*).

Once Scott concluded his testimony, VE Michelle Peters-Pagella testified. (Tr. 55-63). The ALJ asserted there was no past relevant work for the VE to consider and then posed her first hypothetical. (Tr. 56). The ALJ asked the VE to consider an individual of the same age, educational, and vocational profile as Scott who had the residual functional capacity to perform light work except that he could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He could never climb ladders, ropes or scaffolds. He should avoid workplace hazards such as unprotected heights and dangerous moving machinery. He should avoid working in conditions of extreme heat and/or cold or humidity and/or wetness. He should avoid working

6

in conditions with more than occasional exposure to pulmonary irritants such as dust, odor, toxins or fumes. (*Id.*). The VE opined that such an individual would be capable of working at light, unskilled jobs including as an order clerk, DOT #324.577-010, with 310,000 positions in the national economy; as a sorter, DOT #22.687-022, with 255,000 positions in the national economy; and as a cashier, DOT #211.462-0010, with 420,000 positions in the national economy. (Tr. 56-57).

As a second hypothetical, if the same individual were further limited to the performance of simple tasks in a routine work setting but not a production rate pace, for example, no assembly line work, and limited to occasional changes in the workplace that are well explained in advance, and he could occasionally interact with supervisors, coworkers and the general public, the individual could still work as a sorter, but could not work as an order clerk or cashier. (Tr. 57). He could, however, work at the light, unskilled jobs of inspector, DOT #222.687-042 with 70,000 positions in the national economy; and as a hand packer, DOT #559.687-074, with 90,000 positions in the national economy. (*Id.*).

For the third hypothetical, if the individual in the first hypothetical was limited to sedentary work he would be able to work as a sorter, DOT #209.587-010, with 10,500 positions in the national economy; as a bench packer, DOT #559.687-014, with 8,000 positions in the national economy; and as an order clerk, DOT #209.567-014, with 11,500 positions in the national economy. (Tr. 57-58). For the fourth hypothetical, the ALJ asked the VE to consider the same individual from the second hypothetical, but with a restriction to sedentary work. (Tr. 58). That individual could work as a sorter or bench packer, but not as an order clerk. (*Id.*). He could, however, work as a trimmer, DOT #734.687-094, with 7,000 positions in the national economy. (*Id.*). As a fifth hypothetical, the ALJ inquired if the need to elevate his legs to waist level

7

occasionally throughout the workday would impact his ability to work, and the VE opined that

such a requirement would eliminate all work. (*Id.*). The VE further testified that to maintain

employment, an individual would need to be on task a minimum of 85% of a workday and could

be absent no more than one to one and a half days per month. (Tr. 58-59).

Under questioning from Scott's attorney, the VE opined that a need for a bariatric chair

due to an individual's size and weight would normally require an accommodation. (Tr. 60). The

VE further opined that if an employer needed to speak with a worker and the worker responded

by becoming angry, possibly yelling, screaming or throwing things, there would be no employer

tolerance for that behavior. (Tr. 61).

**IV.    The ALJ's Decision**

In her decision dated November 28, 2023 the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security
Act through June 30, 2013.

2.    The claimant has not engaged in substantial gainful activity since January
1, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq*. and
416.971 *et seq.*)

3.    For the purposes of the claimant's Title XVI application, the claimant has
the following severe impairments: obesity, diabetes mellitus (DM) type II,
venous insufficiency, lymphedema, irritable bowel syndrome (IBS),
osteoarthritis (OA of the bilateral knees, anxiety disorder, major depressive
disorder (20 CFR 416.920(c)). For the purposes of the claimant's Title II
application, the undersigned finds the claimant has no severe impairments
(20 CFR 404.1520(c)). The remainder of the decision will address the Title
XVI application only.

4.    The claimant does not have an impairment or combination of impairments
that meets or medically equals the severity of one of the listed impairments
in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925
and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that
the claimant has the residual functional capacity to perform sedentary work
as defined in 20 CFR 416.967(a) with the following limitations: he can

occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He should avoid workplace hazards such as unprotected heights and dangerous moving machinery. He should avoid working in conditions of extreme heat and/or cold or humidity and/or wetness. He should avoid working in conditions with more than occasional exposure to pulmonary irritants such as dusts, odors, toxins, and fumes. He is limited to simple tasks in a routine work setting but not at a production rate pace, for example, no assembly line work. He is limited to occasional changes in the workplace that are well explained in advance. He can occasionally interact with supervisors, coworkers, and the general public.

6.      The claimant has no past relevant work. (20 CFR 416.965).

7.      The claimant was born on August 24, 1988 and was 24 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. (20 CFR 416.963).

8.      The claimant has at least a high school education. (20 CFR 416.964).

9.      Transferability of job skill is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.9691).

11.     The claimant has not been under a disability, as defined in the Social Security Act, since January 1, 2013, the date of this decision (20 CFR 416.920(g)).

(Tr. 19-29).

## V.    Law and Analysis

### A.    Standard for Disability

Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits:

1.      whether the claimant is engaged in substantial gainful activity;

2.      if not, whether the claimant has a severe impairment or combination of impairments;

3.      if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4.      if not, whether the claimant can perform their past relevant work in light of his RFC; and

5.      if not, whether, based on the claimant's age, education, and work experience, they can perform other work found in the national economy.

20 C.F.R. § 404.1520(a)(4)(i)-(v)[2]; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The Commissioner is obligated to produce evidence at Step Five, but the claimant bears the ultimate burden to produce sufficient evidence to prove they are disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

   **B.      Standard of Review**

This Court reviews the Commissioner's final decision to determine whether it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). However, the substantial evidence standard is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*, quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

---

[2] The regulations governing DIB claims are found in 20 C.F.R. § 404, *et seq.* and the regulations governing SSI claims are found in 20 C.F.R. § 416, *et seq.* Generally, these regulations are duplicates and establish the same analytical framework. For ease of analysis, I will cite only to the relevant regulations in 20 C.F.R. § 404, *et seq.* unless there is a relevant difference in the regulations.

Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Id.* at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets the substantial evidence standard. *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783. This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, this Court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011). Requiring an accurate and logical bridge ensures that a claimant and the reviewing court will understand the ALJ's reasoning, because "[i]f relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked." *Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012).

## VI.  Discussion

Scott brings a single issue for this Court's review, arguing that the ALJ failed to account for multiple limitations opined by the state agency experts, and erroneously rejected another without providing proper explanation. (ECF Doc. 7, p. 2). He asserts that the two state agency

11

reviewing psychologists reviewed the record and provided very similar, though not identical opinions that the ALJ found to be "somewhat" persuasive. (*Id.* at p. 7). The ALJ provided different or additional restrictions that she felt better quantified Scott's abilities, but in so doing, Scott claims, she erroneously omitted the limitation to superficial interactions with supervisors, co-wrokers and the general public as opined by both experts, and failed to account for other restrictions without supporting explanation. (*Id.*). As the RFC therefore is not supported by substantial evidence, Scott contends, the case should be remanded for further proceedings. (*Id.*).

Specifically, Scott notes that both reviewing psychologists opined that Scott was limited to superficial interactions with others. (*Id.*). Dr. Finnerty opined that Scott could carry out simple commands with adequate persistence and pace, and that he could adapt to a static work setting without frequent changes.[3] (*Id.*). Dr. Haskins opined that Scott could carry out short cycle tasks in a setting that did not have a fast-paced demand, and that he could adjust to minor changes in the work setting but would need major changes to be introduced in advance and then gradually phased in to allow him time to adjust. (*Id.* at pp. 7-8).

Scott contends that the ALJ "did seem to agree with [the reviewing state agency psychologist's] opinions with the exception of the social interaction limitation." (*Id.* at p. 8). Yet the ALJ's RFC does not account for all of the otherwise persuasive limitations suggested by the experts' opinions. (*Id.*). Specifically, Scott takes exception with the ALJ's RFC restricting him from performing work at a production pace, such as assembly line work, arguing this does not properly account for the experts' opinions restricting him from fast-paced work. (*Id.* at p. 10). Further, Scott claims the restriction to "occasional changes in the workplace that are well

---

[3] In his Brief on the Merits, Scott wrote that Dr. Finnerty opined Mr. Scott "could adapt to a static work setting without **infrequent** changes." (ECF Doc. 7, p. 7) (emphasis added). A review of the record, however, shows that Dr. Finnerty's opinion indicated Scott could adapt to a static work setting without **frequent** changes." (Tr. 73) (emphasis added).

explained in advance" does not properly account for the experts' recommendation that any changes need to be introduced in advance and then gradually phased in. (*Id.* at p. 11). Scott argues these recommended restrictions were omitted without explanation, rendering it impossible to discern if the ALJ's RFC is an accurate representation of Scott's capabilities. (*Id.*).

Scott claims the ALJ's rejection of the experts' limitations relative to social interaction was not supported by substantial evidence. (*Id.* at pp. 8-9). According to Scott, the ALJ's finding that the evidence was inconsistent with a limitation to superficial interactions with others, but consistent with a finding of occasional interactions, was "incomplete and flawed." (*Id.* at p. 12). Scott acknowledges that the ALJ's decision found that a social limitation to superficial interactions was inconsistent with the experts' assessment that he had a moderate limitation in social interaction, but he argues that without further explanation, a subsequent reviewer was left to "simply trust her that a moderate limitation is inconsistent with a limitation to superficial interaction with others." (*Id.*). Further, Scott asserts that the ALJ's reliance on his activities to determine that a limitation to superficial interactions with others was contradictory with the record was "disingenuous" (*Id.* at p. 13), and not supported by substantial evidence (*Id.* at p. 15).

In response, the Commissioner first defends the ALJ's limitation by arguing that the restriction from work at a production rate pace, rather than from fast paced work, represented a version of the same limitation, just phrased differently. (ECF Doc. 9, p. 9). According to the Commissioner there is no requirement that the RFC limitation "mirror" the State Agency finding, and such distinctions do not rise to the level of error. (*Id.*). Similarly, the Commissioner argues that the distinction Scott alleges between "occasional changes in the workplace that are well explained in advance" in the ALJ's RFC and the experts' recommendation that "any changes

need to be introduced in advance and then gradually phased in" is not enough to rate as error. (*Id.*).

As to the social interaction argument, the Commissioner asserts that substantial evidence supported the ALJ's conclusion that a limitation to superficial interactions with others was inconsistent with the evidence in the record. (*Id.* at p. 10). The Commissioner argues the record is replete with evidence that shows Scott was more capable of social interactions than a superficial limitation would suggest, and references to the benefit Scott received from his medications that reduced his psychologically based symptoms. (*Id.* at p. 11). In the Commissioner's view, it was logical to point to evidence of activities requiring some social interaction when addressing the degree of limitation Scott required in the area of social interaction. (*Id.* at p. 12). Finally, the Commissioner points out that the ALJ did impose significant social interaction limitations, though not to the extreme suggested by the experts, and the ALJ's limitations were supported by the record. (*Id.*).

An ALJ is not required to adopt all of the limitations suggested in prior administrative medical findings or medical opinions, even if the ALJ has found the prior administrative medical findings or opinions to be persuasive. *See generally,* 20 C.F.R. §§ 404.1520c; 419.920c. The ALJ – while not a physician – is responsible for assessing a claimant's RFC. *See* 20 C.F.R. § 404.1546(c); *Pitrman v. Comm'r of Soc. Sec.*, No. 3:15-cv-1503, 2023 WL 3510752, *13 (N.D. Ohio April 10, 2023). When assessing a claimant's RFC, an ALJ "is not required to recite the medical opinion of a physician verbatim in [her] residual functional capacity finding…[and] and ALJ does not improperly assume the role of a medical expert by assessing the medical and nonmedical evidence before rendering a residual functional capacity finding. *Poe v. Comm'r of Soc. Sec.*, 342 F.App'x 149, 157 (6th Cir. 2009).

"[E]ven where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Furthermore, an ALJ is not obligated to explain each limitation or restriction adopted or not adopted. *Pitrman*, 2023 WL 3510752, at *14. "The ALJ is not required to describe the claimant's limitation using the exact language of those medical sources as long as substantial evidence demonstrates that the ALJ adequately portrayed the claimant's limitations in the RFC." *Aerial T. v. Comm'r of Soc. Sec.*, No. 2:23-cv-04188, 2025 WL 798367, at *3 (S.D. Ohio Mar. 13, 2025).

In this case, the ALJ found the opinions of the state agency reviewing psychologists to be "somewhat persuasive" noting that she "provided for somewhat different/additional restrictions in order to better quantify the claimant's abilities." (Tr. 33). With regard to speed- and pace-based restrictions, the state agency reviewing psychologist, Dr. Haskins, found that Scott had a moderate limitation with concentration, persistence and maintaining pace, and he could carry out short cycle tasks in a setting that did not have a fast pace demand. (Tr. 94). The ALJ's RFC established a restriction limiting Scott to "simple tasks in a routine setting but not at a production rate pace, for example, no assembly line work." (Tr. 23). In a nearly identical scenario, this Court has determined that such language "appropriately echoed and accommodated the speed and pace restrictions set forth in the underlying medical opinions." *Stoodt v. Comm'r of Soc. Sec.*, No. 3:20-cv-02370, 2022 WL 721455, *13 (N.D. Ohio Jan. 13, 2022). While the RFC restriction is not a verbatim recitation of the limitation recommended by the state agency reviewing psychologist, such uniformity is not required and seems even less necessary where the ALJ identifies an opinion as "somewhat persuasive." The ALJ considered the totality of the evidence,

15

including reports that he could engage in his hobbies, including anime and video games, that his medication was assisting him in managing his mental health symptoms, that he lacked distractibility and that he could engage in activities of daily living including driving, shopping, vacationing, and traveling by plane. (Tr. 27-28).

Having considered the evidence, the ALJ accounted properly for Scott's moderate concentration, persistence and maintaining pace limitation. Scott has not shown evidence to establish a more restrictive RFC was required to adequately account for his limitations as opined by the state agency reviewing psychologist. Accordingly, this restriction does not countenance remand.

Similarly, Scott contends that the ALJ failed to account for the state agency psychologists' opinion that any major changes needed to be introduced in advance and then gradually phased in to allow the claimant time to adjust to the new expectations. (Tr. 95). Scott alleges that "this limitation was completely unaccounted for in the residual functional capacity." (ECF Doc. 7, p. 11). This allegation is belied by the inclusion in the RFC of the restriction that Scott "is limited to occasional changes in the workplace that are well explained in advance." (Tr. 23). As above, the ALJ is not obligated to adopt a limitation suggested by an expert verbatim. *See Poe*, 342 F.App'x at 157. A finding that changes be occasional and well explained in advance is entirely consistent with the expert opinion, and the record as a whole. Accordingly, this issue misses the mark.

Finally, Scott argues that the ALJ erroneously rejected the state agency psychologists' opinions that he was limited to superficial interactions with others. (ECF Doc. 7, p. 11). The ALJ's RFC limits Scott to occasional interactions with supervisors, coworkers and the general public. (Tr. 23). The Sixth Circuit has analyzed whether an ALJ gave proper weight to a

16

psychologists' evaluation that the claimant could relate on a "superficial basis" when the ALJ limited the claimant to "occasional interaction." *Reeves*, at 275. The Sixth Circuit determined that the "occasional" limitation in the RFC was "not inconsistent" with the psychologists' "superficial" limitation. *Haahr v. Comm'r of Soc. Sec.*, No. 3:23-CV-02159-JRK, 2024 WL 3813772, *12 (N.D. Ohio July 3, 2024), *report and recommendation adopted as modified*, No. 3:23 CV 2159, 2024 WL 5242214 (N.D. Ohio Dec. 30, 2024)

Although the Sixth Circuit has not addressed the meaning of these terms since its opinion in *Reeves*, courts remain divided on the meaning of "occasional" and "superficial" interactions. *Haahr,* 2024 WL 3813772 at *12. Courts in this District have pointed out "there is no definition for the term 'superficial interaction' in the Dictionary of Occupational Titles." *Johnson v. Comm'r of Soc. Sec.*, No. 1:22-cv-02272, 2023 WL 8283922, at *15 (N.D. Ohio Nov. 9, 2023) (citations omitted), *report and recommendation adopted*, 2022 WL 8281461 (N.D. Ohio Nov. 30, 2023); *Burley v. Commr. of Soc. Sec.,* No. 4:23-CV-00218, 2024 WL 1297554, *6, (N.D. Ohio March 27, 2024) ("The Court declines to adopt our sister District's approach distinguishing superficial and occasional interaction."); *James v. Commr. of Soc. Sec.*, No. 1:22-CV-1915, 2023 WL 417932, *20 (N.D. Ohio June 5, 2023). Courts in the Southern District appear to have adopted a vocational term of "superficial" interactions, "which definition is presumed to be qualitatively inconsistent with 'occasional' interactions." *Stephen D. v. Comm'r. of Soc. Sec.,* No. 1:21-CV-00746, 2023 WL 4991918, *7 (S.D. Ohio August 4, 2023), *report and recommendation adopted*, S.D.Ohio No. 1:21-CV-7462024 WL 2204735; *see also, e.g.*, *William H. v. Comm'r of Soc. Sec.*, No. 3:21-cv-219-CHG, 2022 WL 4591304, *4-6 (S.D. Ohio Sept. 30, 2022) (ALJ made reversible error by dismissing "superficial" as lacking vocational definition, despite district precedent defining the term relative to social interactions); *Crisp v. Comm'r of*

*Soc. Sec.*, No. 2:19-cv-2401-MHW-CMV, 2020 WL 581841, *3-4 (S.D. Ohio Feb. 6, 2020) (reversing based on ALJ's "inadequate" rejection of "superficial interactions" as "somewhat ambiguous").

Rather than follow the Southern District of Ohio's approach that distinguishes between superficial and occasional interaction, this Court aligns with those from this District that have remained true to the precedent established by *Reeves*. The fact the ALJ utilized the phrase "occasional" rather than "superficial" interaction with a claimant's supervisors does not draw a distinction void of explanation, and is harmless error. *Haahr,* 2024 WL 3813772, at *12. As there is no requirement for the ALJ to adopt the state agency assessment verbatim, the more relevant inquiry is whether the facts in this case demonstrate that the RFC assessment is not supported by substantial evidence. *Johnson*, 2023 WL 8283922, at *1 (citing *Daniels v. Comm'r of Soc. Sec.*, No. 3:19-CV-02946, 2020 WL 6913490, at *10 (N.D. Ohio Nov. 24, 2020).

Here, the ALJ clearly cited substantial evidence from the record in support of the restriction to occasional interactions with others. In addressing Scott's mental health, the ALJ noted that in August 2021, Scott "noted he had been going gaming and to a game store, acknowledging he was feeling more comfortable in crowds." (Tr. 26). In November 2021, Scott reported traveling to attend his brother's wedding, and felt that his anxiety was "stable." (*Id.*). In February 2022, Scott stated that "his medication is helpful for him," and that his only mental health concerns were related to anxiety concerning his physical pain. (*Id.*). In April 2022, he reported being seated next to strangers on a plane and "coped well." (*Id.*). In January 2023, Scott denied any social anxiety or panic attacks and again reported his medication was working well, although he described going out in public as "not fun." (Tr. 27). The ALJ noted that Scott has "reported engaging in activities of daily living, including driving, shopping, playing video

18

games/enjoying hobbies, vacationing, travelling by plane and attending a wedding, all of which suggest he is not limited as alleged." (*Id.*). Finally, in assessing the opinions of the state agency reviewing psychologists, the ALJ wrote:

> In addition, the social restriction provided is inconsistent with a moderate limitation and the record, which reflects the claimant is able to interact socially with his family, attend social events, shop, travel via airplane (next to strangers), and generally interact without significant deficit in mood. (1F, 6F, *for example*).

(Tr. 28).

Scott offers no evidence that demonstrates how the ALJ's limitation to occasional interactions with others was not supported substantial evidence or distinguishable from superficial interaction. See *Daniels v. Comm'r of Soc. Sec.*, No. 3:19-CV-02946, 202 WL 6913490, *10 (N.D. Ohio Nov. 24, 2020). The ALJ properly accounted for Scott's "moderate" impairment in interacting wth others, as she limited Scott to occasional interactions with supervisiors, co-workers and the general public. *See Schaefer v. Comm'r of Soc. Sec.*, No. 13-10105, 2014 WL 562436, at *2 (E.D. Mich. Feb. 13, 2014) (ALJ's limitation that claimant "must have no more than occasional interaction with the public or co-workers," adequately accounted for the moderate impairments.).

With this, I determine that the ALJ supported the restriction to occasional interactions with substantial evidence, and that the RFC withstands muster. I therefore recommend the District Court affirm.

## VII. Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Scott's applications for DIB and SSI be affirmed.

19

Dated: September 29, 2025

Reuben J. Sheperd
United States Magistrate Judge

_____

## OBJECTIONS

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\*\*\*

Failure to file objection within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendations. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act." *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL

20

3018175, 2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interests of justice. *See United States v. Wandashega,* 924 F.3d 868, 878-79 (6th Cir. 2019)